IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

PAUL RICHARD SPURLOCK AND
KATHY ROBIN SPURLOCK,

                       Debtors,

PAUL RICHARD SPURLOCK AND
KATHY ROBIN SPURLOCK,

                       Plaintiffs,

v.                                                   CIVIL ACTION NO. 3:10-1252

PHH MORTGAGE CORPORATION AND
FEDERAL NATIONAL MORTGAGE
ASSOCIATION

                       Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Defendant PHH Mortgage Corporation's (PHH) Motion to Dismiss Count 1 of the Complaint [doc. No. 13] and PHH's Motion to Dismiss the Claims of Kathy Robin Spurlock and Dismiss Kathy Robin Spurlock as a Party Plaintiff [doc. no. 11]. For the following reasons, the Court **GRANTS, in part,** and **DENIES, in part,** the Motion to Dismiss Count 1, and **GRANTS** the Motion to Dismiss the Claims of Kathy Robin Spurlock and Dismiss Kathy Robin Spurlock as a Party Plaintiff.

**I.**
**FACTS**

In their Complaint, Plaintiffs Paul and Kathy Spurlock state they purchased a house in Huntington, West Virginia on November 17, 2006, and financed the house by executing first and second Deeds of Trust in favor of PHH. Both instruments were prepared by PHH. At some point

thereafter, Plaintiffs went into default on their mortgage. On or about April 16, 2009, Plaintiffs state they received a certified letter from PHH's attorney stating that a trustee sale of the house would occur on May 7, 2009. Upon receipt, Mr. Spurlock alleges he called PHH's attorney to work out a payment plan and to cancel the sale. A representative of the attorney's office allegedly told Mr. Spurlock that the sale already was cancelled and would not occur. Mr. Spurlock further asserts he discussed with the representative a payoff to reinstate the loan and a "Cash for Keys" program. Plaintiffs state they received no further communication from Defendants about rescheduling the sale or working out a payment plan.

On September 30, 2009, PHH foreclosed on the house and sold it by public auction to Defendant Federal National Mortgage Association ("Fannie Mae"). The Trustee Deed, dated October 9, 2009, was recorded in the office of the County Clerk for Cabell County, West Virginia. Plaintiffs state they knew nothing of the sale until they received a "NOTICE TO VACATE" on or about October 9, 2009, from a law firm representing Fannie Mae.

In Count I of their Complaint, Plaintiffs allege the sale violated their due process rights and West Virginia Code § 38-1-1 *et seq*. PHH moves to dismiss this count for failure to state a claim. In their Response, Plaintiffs concede that their due process claim must be dismissed as there was insufficient state action. *See Dennison v. Jack*, 304 S.E.2d 300 (W. Va. 1983) (holding that foreclosure proceedings under West Virginia Code § 38-1-1 *et seq*. do not involve significant state action). However, Plaintiffs argue they have stated a valid claim that PHH violated West Virginia Code § 38-1-4.

-2-

**II.**
**STANDARD OF REVIEW**

In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the United States Supreme Court disavowed the "no set of facts" language found in *Conley v. Gibson*, 355 U.S. 41 (1957), which was long used to evaluate complaints subject to 12(b)(6) motions. 550 U.S. at 563. In its place, courts must now look for "plausibility" in the complaint. This standard requires a plaintiff to set forth the "grounds" for an "entitle[ment] to relief" that is more than mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555 (internal quotation marks and citations omitted). Accepting the factual allegations in the complaint as true (even when doubtful), the allegations "must be enough to raise a right to relief above the speculative level . . . ." *Id*. (citations omitted). If the allegations in the complaint, assuming their truth, do "not raise a claim of entitlement to relief, this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id*. at 558 (internal quotation marks and citations omitted).

In *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), the Supreme Court explained the requirements of Rule 8 and the "plausibility standard" in more detail. In *Iqbal*, the Supreme Court reiterated that Rule 8 does not demand "detailed factual allegations[.]" 129 S. Ct. at 1949 (internal quotation marks and citations omitted). However, a mere "unadorned, the-defendant-unlawfully-harmed-me accusation" is insufficient. *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). Facial plausibility exists when a claim contains "factual content that allows the court to draw the reasonable inference that the defendant is liable

for the misconduct alleged." *Id.* (citation omitted). The Supreme Court continued by explaining that, although factual allegations in a complaint must be accepted as true for purposes of a motion to dismiss, this tenet does not apply to legal conclusions. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 1950. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). The Supreme Court further articulated that "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

Plaintiffs assert, however, that Rule 12(b)(6) does not apply because PHH has attached to its motions a copy of the Deed, the Deed of Trust, the notice, the letter dated April 16, 2009, and the Note. Therefore, Plaintiffs argue this Court must treat the motions to dismiss as ones for summary judgment. However, Rule 12(b)(6) does not require this Court to consider a motion to dismiss as a motion for summary judgment simply because exhibits are attached to the motion and are considered by the court. *Pueschel v. U.S.*, 369 F.3d 345, 354 n.3 (4th Cir. 2004). "[W]hen a defendant attaches a document to its motion to dismiss, a court may consider it in determining

whether to dismiss the complaint if it was integral to and explicitly relied on in the complaint and if the plaintiffs do not challenge its authenticity." *American Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004) (alterations and internal quotation marks omitted). In addition, "a court may consider official public records[.]" *Witthohn v. Federal Ins. Co.*, 164 Fed. Appx. 395, *1 (4th Cir. 2006) (citations omitted). The Rule requires conversion when the motion or exhibits "present matters outside the nonmoving party's pleadings and the district court does not exclude such matters." *Pueschel*, 369 F.3d at 354 n.3 (citing, in part, Fed. R. Civ. P. 12(b)(6) (providing that "[i]f, on a motion . . . to dismiss . . . matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56"); *Harrison v. U.S. Postal Serv.*, 840 F.2d 1149, 1152 n. 7 (4th Cir. 1988) (noting that the district court's reliance on attachments to a motion to dismiss did not convert the motion into one for summary judgment because all "the facts to which the court so referred were either alleged in the amended complaint or contained in the exhibits thereto")).

In this case, the Complaint specifically references the Deed of Trust and the letter sent from PHH's counsel setting the sale for May 7, 2009. In addition, the Deed and Deed of Trust are part of the public record. In any event, the Court does not rely upon these documents in making its decision with respect to PHH's motion to dismiss Count I, as the predominate issue is whether West Virginia law requires personal notice of a foreclosure sale. Likewise, with respect to the motion seeking dismissal of Mrs. Spurlock's claims, the Court finds the relevant documents are integral to the Complaint and explicitly relied upon therein, and Plaintiff does not challenge their

authenticity. Therefore, the Court will not convert PHH's motions to dismiss into ones for summary judgment.

### III.
### DISCUSSION

#### A.
#### Motion to Dismiss Count I

The current version of West Virginia Code § 38-1-4 provides, in relevant part:

> Unless property is to be sold under a deed of trust executed and delivered prior to . . . [July 1, 1980] . . . which contains a provision waiving the requirement of published notice, the trustee shall publish a notice of a trustee's sale as a Class II legal advertisement . . . .
>
> Except as expressly provided in this section, no trust deed shall waive the requirements of publication of notice required by this section.
>
> In all cases, a copy of such notice shall be served on the grantor in such trust deed . . . by certified mail, return receipt requested, directed to the address shown by the grantors on the deed of trust or such other address given to the beneficiary of said trust deed or said beneficiary's agent or assignee in writing by the said grantor subsequent to the execution and delivery of the trust deed and notice shall be deemed complete when such notice is mailed to the aforesaid address, notwithstanding the fact that such mail may be returned as refused or undeliverable . . . .
>
> Every notice of sale by a trustee under a trust deed shall show the following particulars: (a) The time and place of sale; (b) the names of the parties to the deed under which it will be made; (c) the date of the deed; (d) the office and book in which it is recorded; (e) the quantity and description of the land or other property or both conveyed thereby; and (f) the terms of sale.

\*   \*   \*

> The provisions of this section relating to the methods of serving notice are not exclusive. In addition to, but not in lieu of, any service of notice required by the provisions of this section, service of such notice may be also made by any other method authorized for service of original process in the circuit courts of this state by statute or by the rules of civil procedure for trial courts of record.

West Virginia Code § 38-1-4 (1987).

As recognized by both parties, the language in this statute clearly provides that notice of the sale must be published and sent to the grantor in the deed of trust. PHH points out, however, the statute further states that the notice by publication may not be waived, while the statute is silent as to whether a grantor of a deed of trust may waive personal notice of the sale. PHH argues this silence is significant because it indicates that the West Virginia Legislature did not foreclose waiver of personal notice like it did with the publication requirement. In other words, the West Virginia Legislature clearly could have put an anti-waiver clause in the statute with respect to personal service, as it did with the notice of publication requirement, but it chose not to do so. Thus, PHH argues there is nothing that prevents a grantor from contractually waiving personal notice, which is exactly what happened in this case.[1] PHH further asserts its position is bolstered by the fact the West Virginia Supreme Court has long recognized the validity of waivers of personal service in deeds of trust. *See Smith v. Bell*, 41 S.E.2d 695, 702 (W. Va. 1947) (holding a waiver by a grantor "in a deed of trust[] of the provision of the statute that a copy of the notice of sale be served on the

---

[1]Paragraph 22 of the Deed of Trust provides, in part: "Borrower hereby waives personal service of notice of any sale made hereunder, upon Borrower . . . and also waives the posting of notice of sale at the courthouse." *Deed of Trust*, at ¶22, in part.

grantor in the deed . . . is a valid and binding waiver and it operates to satisfy or dispense with that requirement of the statute").

The Court agrees with PHH that the West Virginia Supreme Court had long permitted waivers of personal service in a deed of trust. However, the statute has been significantly amended over the years and the applicability of those early cases is now limited. For instance, in *Smith*, the West Virginia Supreme Court decided that a grantor may waive personal service in a deed of trust under the 1923 version of the statute found at Chapter 72, Section 7. 41 S.E.2d at 696-97. The 1923 version provided that personal notice was to be given only to a grantor who lived within the county in which the property to be sold was located. There was no statutory requirement that a grantor outside the county was to be given personal notice. *Id*. In determining that a within-county grantor could waive personal notice in a deed of trust, the court found that such a grantor could learn of the sale by publication in the local newspaper or on the court house door. *Id.* at 698. Additionally, the Court emphasized that a lack of personal notice to a within-county grantor does not put such grantor at any unfair disadvantage considering that a grantor who resides outside the county is not entitled to any notice. *Id*. at 698-99. Given that the right to personal notice was not extended to all grantors under the statute, the court decided that a grantor may waive the right to such notice without violating public policy. *Id*. at 699-700.

The 1923 version of the statute also allowed publication of the sale to be waived in the deed of trust.[2] In 1980, however, the statute was amended and expressly prohibited the waiver of published notice by including language which read that, "except as expressly provided in this section, no trust deed shall waive the requirements of publication of notice as required by this section." W. Va. Code § 38-1-4 (1980), as amended, in part. Also included in the 1980 version was language which expressly permitted the waiver of personal service of such notice of a within-county grantor. *Id*. (providing, in part, "in all cases whether the notice be published or not, a copy of such notice shall be served on the grantor in such trust deed . . . if he or they be within the county, . . . unless service of such notice be expressly waived by the grantor in any such trust deed"). The 1980 version of the statute, however, still contained no requirement that those grantors living outside the county be given personal notice.

The statute was amended again in 1985 and 1987. Significantly, the 1987 version, which is the version applicable to the instant case, continued to require a copy of the notice be served upon the grantor, but it removed the language which made it applicable only to those within the county and removed the language which expressly allowed such notice to be waived by the grantor in the deed of trust. Thus, the notice requirement was extended to all grantors regardless of whether they lived in the county in which the property was located and the express language allowing waiver of personal service in the deed of trust no longer existed. In light of this history, the Court finds the fact the statute contains express language prohibiting waiver of publication, but

---

[2]Chapter 72, Section 7, Code 1923 provides, in part: "When any property is about to be sold under a deed of trust, the trustee shall, unless it be otherwise provided in the deed of trust . . . publish a notice of such sale . . . ."

no language with respect to waiver of personal service, is not as significant as PHH argues. The publication language is simply residual language from the 1980 amended version when the West Virginia legislature took away the right to waive the publication requirement. Although it would have preferable for the 1987 amendment to have added anti-waiver language with respect to personal notice, the fact the legislature broadened the notice requirement to all grantors and removed the language expressly allowing waiver of personal notice is indicative that such waivers are no longer valid.

Indeed, in discussing the 1987 version of West Virginia Code § 38-1-4, the West Virginia Supreme Court reached this same conclusion in *Joy v. Chessie Employees Federal Credit Union*, 411 S.E.2d 261 (W. Va. 1991). In *Joy*, the court was analyzing another part of the statute that required 20 day notice to the grantor prior to the sale. In 1987, the legislature removed the 20 day requirement for notice. 411 S.E.2d at 264. Despite the fact there now was no firm time limit for notice, the court held the legislature actually strengthened West Virginia Code 38-1-4. Although not discussing the historical treatment of waivers, the court stated: *"Grantors may no longer waive notice.* Previously, grantors could waive notice altogether; and it does not take a great deal of knowledge about the credit industry to understand that if grantors can waive notice, creditors will make such waiver a standard part of their form agreements." *Id*. at 264-65 (emphasis added). Given this decision and the statutory history, the Court finds the waiver of personal notice in the Deed of Trust in this case is unenforceable under West Virginia law.

PHH further argues that, even if the provision is unenforceable, Plaintiff's actually received notice of the sale in April of 2009. Although the sale did not occur on May 7, 2009, as set forth in the notice, PHH argues there is no requirement the notice be reissued. The Court disagrees. West Virginia Code § 38-1-4 clearly provides: "Every notice of sale by a trustee under a trust deed shall show the following particulars: (a) The time and place of the sale . . . ." W. Va. Code § 38-1-4, in part. In this case, Plaintiffs allege the sale was cancelled and did not occur until September 30, 2009. Plaintiffs further state they had no contact with PHH after they were told the sale was cancelled. As notice must provide the time of the sale, if the sale is cancelled and later rescheduled, then it is only common sense that the trustee must inform the grantor of new day and time so the grantor has the *notice* required by law.[3]

Lastly, PHH also claims that, even if Plaintiffs can show they were entitled to notice and did not receive it, they cannot show they have suffered any harm. In the Complaint, Plaintiffs assert the harm they suffered is the loss of their house. PHH states that the notice requirement is designed to give notice to the public of the sale so there is not a "sacrificial" sale of the property due to lack of bidders. *Russell v. Webster Springs Nat. Bank*, 265 S.E.2d 762, 764 (W. Va. 1980) (stating "[t]he object of a notice of sale is to secure bidders by informing the public of the nature and

---

[3]This case is unlike *Russell v. Webster Springs National Bank*, 265 S.E.2d 762 (W. Va. 1980), where the West Virginia Supreme Court found a one hour difference "between the time given in the notice of sale . . . and the actual time of sale . . . was not such a material and substantial departure from the provisions of the trust deed or notice of sale as to vitiate the sale." 265 S.E.2d at 764. To the contrary, in this case, there was nearly a five-month gap between the date given in the notice and the actual sale. In addition, Plaintiffs allege they contacted PHH's attorney and were told the sale was cancelled. They assert they were never told the sale was rescheduled for another day.

condition of the property to be sold, and of the time, place and terms of sale so as to prevent a sacrifice of the property"). As there is no allegation in the Complaint that the property was sold at a sacrifice, PHH claims Plaintiffs cannot show they suffered harm. Moreover, PHH states, even if Plaintiffs had notice of the actual day of the sale, they could not have prevented the sale from taking place. Thus, the fact the house was sold is not a compensable harm.

In considering these arguments, the Court finds that *Russell* should not be read so broadly. First, *Russell* was decided prior to the 1987 amendment which this Court finds requires notice to the grantor in the deed of trust. Second, although *Russell* does speak to the purpose of publishing notice, it does not state it is the only purpose of notice. This Court finds it difficult to believe that the West Virginia Supreme Court would hold that the legislature's decision to revoke the waiver of the personal notice provision serves no purpose beyond the publication requirement to obtain bidders at auction. Clearly, requiring notice to the grantor serves a very different purpose than merely securing bidders for the property.

Particularly in today's foreclosure mess, a grantor may have grounds to seek an injunction of a foreclosure based upon bad lending practices or other insidious act when the loan was originated. In addition, personal notice may impress urgency upon a grantor to make one last effort to cure the default or work out an arrangement so the foreclosure does not occur. Indeed, this last ditch effort is exactly what Plaintiffs allege occurred in this case, in that, after receiving the notice in April of 2009, Plaintiffs assert Mr. Spurlock called to work out an arrangement to prevent the

foreclosure.[4] Thus, as Plaintiffs assert they pursed an alternative to foreclosure and were told the sale was cancelled, the fact the sale occurred months later without any other personal notice is certainly enough to state a plausible claim they were harmed as a result of PHH's failure to follow state foreclosure law. At this time, the Court expresses no opinion as to the merits of the claim, but it is certainly a claim that can survive a motion to dismiss. Accordingly, for the foregoing reasons, the Court **DENIES** PHH's motion to dismiss Count 1 of the Complaint.

### B.
### PHH's Motion to Dismiss the Claims
### of Mrs. Spurlock

In PHH's other Motion to Dismiss [doc. no. 11], it asserts Plaintiff Kathy Robin Spurlock should be dismissed as a party plaintiff because only her husband, Plaintiff Paul Spurlock, signed the mortgage and is listed as the grantor on the Deed of Trust. In addition, the letter sent from PHH's attorney is addressed only to Mr. Spurlock. Therefore, PHH argues that Mrs. Spurlock's claims against PHH cannot be maintained.

As stated above, the only surviving claim in Count I is for failing to provide personal notice under West Virginia Code § 38-1-4 to the grantor of the Deed of Trust. Although the Complaint alleges that Plaintiffs purchased the house, it is undisputed that Mr. Spurlock is the only grantor named on the Deed of Trust. As Mrs. Spurlock is not a grantor, she was not entitled to

---

[4]Moreover, although not critical to this Court's decision, even in the letter sent by counsel with the notice of the sale, there were listed a number of options Plaintiffs could take to prevent foreclosure, such as a procedure to reinstate the loan, payoff opportunities, loss mitigation or workout plans, and counseling services to avoid foreclosures. The letter specifically states, "[e]ven though the time period for the right to cure has expired we will work with you to resolve a possible reinstatement if you will contact this office." *Letter from Golden & Amos, P.L.L.C., to Paul R. Spurlock,* at 3 (Apr. 16, 2009).

personal notice under the statute, and the Court agrees with PHH that her claim for violating the statute must be dismissed.

In Count II, Plaintiffs assert a claim for a violation of West Virginia Consumer Credit Protection Act (WVCCPA). Specifically, Plaintiffs allege that the Second Deed of Trust contains a Balloon Rider which was not identified with certain specific and conspicuous language as required by West Virginia Code § 46A-2-105.[5] With respect to Mrs. Spurlock, however, PHH argues she is not a "consumer" within the meaning of the WVCCPA because she did not sign the note and was not obligated under it. West Virginia Code § 46A-1-102(12) defines a "consumer" as "a natural person who incurs debt pursuant to . . . a consumer loan . . . ." W. Va. Code § 46A-1-102(12). The Court agrees with PHH. Although Mrs. Spurlock asserts she has a marital interest in the house, it

---

[5]West Virginia Code § 46A-1-105(2) provides:

> With respect to a consumer credit sale or consumer loan whenever any scheduled payment is at least twice as large as the smallest of all earlier scheduled payments other than any down payment, any writing purporting to contain the agreement of the parties shall contain the following language typewritten or printed in a conspicuous manner. THIS CONTRACT IS NOT PAYABLE IN INSTALLMENTS OF EQUAL AMOUNTS: Followed, if there is only one installment which is at least twice as large as the smallest of all earlier scheduled payments other than any down payment, by: AN INSTALLMENT OF $... WILL BE DUE ON . . . or, if there is more than one such installment, by: LARGER INSTALLMENTS WILL BE DUE AS FOLLOWS: (The amount of every such installment and its due date shall be inserted).

W. Va. Code § 46A-1-105(2).

does not mean she is a consumer for purposes of the loan. As Mrs. Spurlock did not sign for the loan, she cannot assert a claim as a consumer. Therefore, the Court **GRANTS** PHH's motion to dismiss her claim under the WVCCPA in Count II. *Accord Bishop v. Quicken Loans, Inc.,* No. 2:09-01076, 2010 WL 3522128, *8 (S.D. W. Va. Sept. 8, 2010) (dismissing wife's claim under the WVCCPA, inter alia, because she did not sign the mortgage and was not a party to the agreement).

In Counts III and IV, Plaintiffs assert claims for breach of contract and breach of the duty of good faith and fair dealing. Again, PHH argues as Mrs. Spurlock did not sign the Deed of Trust, these claims must be dismissed because she was not a party to the agreement. Plaintiffs contend the motion is premature because she has a maritial interest in the property and it is yet to be determined whether or not she is a third-party beneficiary to original contract or the subsequent attempt to modify the loan. Plaintiffs assert if Mrs. Spurlock is deemed a third-party beneficiary, she may sue to enforce any covenant or promise made for her benefit pursuant to West Virginia Code § 55-8-12.

West Virginia Code § 55-8-12 states:

> If a covenant or promise be made for the sole benefit of a person with whom it is not made, or with whom it is made jointly with others, such person may maintain, in his own name, any action thereon which he might maintain in case it had been made with him only, and the consideration had moved from him to the party making such covenant or promise.

W. Va. Code § 55-8-12. In its Reply, PHH points out that this statute provides the covenant or promise must "be made for the sole benefit" of Mrs. Spurlock to be actionable. Indeed, in

interpreting this statute, the West Virginia Supreme Court has "consistently given force to the 'sole benefit' requirement." *Eastern Steel Constructors, Inc. v. City of Salem*, 549 S.E.2d 266, 277 (W. Va. 2001). It further has stated:

> "In the absence of a provision in a contract specifically stating that such contract shall inure to the benefit of a third person, there is a presumption that the contracting parties did not so intend and in order to overcome such presumption the implication from the contract as a whole and the surrounding circumstances must be so strong as to be tantamount to an express declaration."

*Id.* at 278 (quoting Syl. Pt. 2, *Ison v. Daniel Crisp Corp.*, 122 S.E.2d 553 (W. Va. 1961)). Although Plaintiffs assert PHH's motion is premature, the Court disagrees.

In this case, there is no allegation in the Complaint that the contract was entered into for the sole benefit of Mrs. Spurlock. Indeed, Plaintiffs' contention that the house is their marital home would belie such an allegation if it were made. Moreover, there is nothing in the Deed of Trust specifically stating it is for her sole benefit. Thus, Plaintiffs must overcome a strong presumption it was not so intended to be for her sole benefit by demonstrating that an "implication from the contract as a whole and the surrounding circumstances" present such a strong showing that it is "tantamount to an express declaration." *Id*. Plaintiffs have set forth no allegations in their Complaint which, even assuming their truth, could result in such a showing. Thus, as Plaintiffs cannot met the *Twombly* and *Iqbal*'s plausibility requirement, this Court **GRANTS** PHH's motion to dismiss Mrs. Spurlock's claims under Counts III and IV. *See Ashcroft v. Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570) (requiring a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'").

Finally, PHH also moves to dismiss Mrs. Spurlock's claims in Counts V and VI for intentional and negligent misrepresentation. Specifically, Plaintiffs allege PHH either intentionally or negligently misrepresented the sale scheduled for May 7, 2009, was cancelled and their property would not be subject to foreclosure. PHH moves to dismiss Mrs. Spurlock's claims on the grounds it had no contractual duty to her and it directed its correspondence only to Mr. Spurlock, as he was the grantor in the Deed of Trust. The Court agrees with PHH and notes that Plaintiffs' factual allegations in the Complaint even profess it was Mr. Spurlock who called and was allegedly told the sale was cancelled, and Plaintiffs had no further communication with PHH. Thus, the Court **GRANTS** PHH's motion to dismiss Mrs. Spurlock's claim under Counts V and VI. As the Court has determined all of Mrs. Spurlock's claims should be dismissed, the Court further **GRANTS** PHH's motion to dismiss her as a party plaintiff.

### III.
### CONCLUSION

Accordingly, as to PHH's Motion to Dismiss Count 1 of the Complaint [doc. no. 13], the Court **GRANTS** the motion with respect to Plaintiffs' due process claims and **DENIES** the motion with respect to the statutory claim. The Court further **GRANTS** in full PHH's Motion to Dismiss the Claims of Kathy Robin Spurlock and to Dismiss Kathy Robin Spurlock as a Party Plaintiff [doc. no. 11].

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER:       June 17, 2011

_____
ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE